Luz Patria Ramos, etc., Plaintiff and Appellant, v. María Augy Matheleis, Defendant and Appellee.

No. 8350. Argued March 11, 1942.—Decided March 19, 1942.

E. *Díaz Santana* and *E. Mieres Calimano* (*José Soto Rivera* on the brief) for appellant. *E. H. F. Dottin* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The action of filiation in which was rendered the judgment giving rise to the present appeal, was brought by a minor who alleged that she was born on November 14, 1935, that her putative father, Guillermo Selosse Augy, died on December 4, 1937, and that her mother, who married José Ignacio Morales on October 16, 1931, was divorced on October 5, 1934. The principal defense relied on by the appellee is that the plaintiff minor was born long before the year 1935, and the essential question to be determined in the present appeal is whether or not the trial court manifestly erred in finding that on September 23, 1940, when the case was tried, the plaintiff was over six years of age. If that finding is correct, the plaintiff was born, prior to September 23, 1934, and such being the case, even though she were actually the daughter of Guillermo Selosse, she could not have the status of a natural child, inasmuch as at the time of her conception and even at the time of her birth, her mother was the wife of José Ignacio Morales and, therefore, could not contract marriage with said Guillermo Selosse.

The evidence on this particular is conflicting. That for the plaintiff was wholly oral, inasmuch as, according to her mother, the minor was neither registered in the Demographic Registry nor christened. The evidence for the defendant consisted mainly of the expert testimony of Dr. J. R. Hernández González, a dental surgeon, and of other testimonial evidence.

Let us make a comparative study of the evidence for both parties in this respect.

Ezequiela Ramos, plaintiff's mother, testified that the girl was born on November 14, 1935, in the home of José Agosto in Hato Rey; that she is neither registered in the Demographic Registry nor has she been christened; that about a year prior to the birth of her child, she started living in concubinage with Guillermo Selosse and continued to live with him for four years after the birth of the child until Selosse's death in 1937.

Olimpia Gil was the midwife who attended the mother of the plaintiff at the latter's birth. She testified that the child was born on November 14, 1935; that she remembers the date because she keeps a notebook with the record of the childbirths, attended by her; that she had known Ezequiela Ramos for about three or four years prior to the birth of the child because they were neighbors.

José Agosto, the owner of the house where it is alleged the plaintiff was born, testified that the latter was born about the year 1935, near Christmas. Answering questions put by the judge, he stated that when he married his present wife he was a widower, but he does not remember when he became a widower. He thinks it was in 1918. He remembers the date of plaintiff's birth because it was at Christmas time, but the witness can not remember whether his marriage took place near Christmas, Carnival, or Holy Week.

Agustina Carrillo, plaintiff's maternal grandmother, testified that Selosse lived with her daughter for about two years prior to the birth of plaintiff, who was born, according to the witness, in the year 1935.

The evidence for the defendant regarding the particular in question consisted of the testimony of Francisco Hernández Santiago and the expert witness Dr. J. R. Hernández González, a dental surgeon. The former testified that he had known plaintiff's mother for about thirteen years; that he

154

has always lived near her; that the plaintiff was born some months after the San Ciprián Hurricane and that prior thereto, that is, in September, 1932, Ezequiela Ramos and José Ignacio Morales lived apart; that he saw the girl for the first time when she was ten or twelve days old.

Dr. J. R. Hernández González testified that he is a dentist and that at the time of the trial he had been for twenty-three years practicing his profession in Puerto Rico. Having examined plaintiff's mouth at the request of the defendant, in the presence of the court, he stated:

"This girl has the six-year molars, the four molars, completely out, and has the lower incisive teeth which correspond to the age between 7 and 8 years, and has here (pointing out inside the girl's mouth) the upper left permanent premolar on the point of coming out, and that must be completely out at the age of nine years; it is now beginning to appear." (Tr. of Ev., p. 94.)

After the close of the direct examination, the plaintiff cross-examined him as follows:

"Q. From the examination of the girl, can you tell her age?—A. Judging from her teeth which are out, she should be at least 8 years old. Her lower teeth corresponding to the age of 8 years are completely out.—Q. Is this an invariable rule or does it so happen that the milk teeth are changed at different times?—A. That sometimes varies.—Q. What makes it vary, that in some cases they come out earlier and in others later?—A. That depends on the child's development.—Q. Does not the condition of the parents have something to do with that?—A. It may, to some extent.—Q. Has the nutrition of the child anything to do with that?—A. A deficient nutrition may retard it somewhat.—Q. Since a deficient nutrition might retard the process, can an efficient nutrition hasten it?—A. That might happen; in the United States such is very often the case, but in Puerto Rico that happens very seldom.—Q. But does it happen?—A. It may happen." (Tr. of Ev., p. 95.)

"  *    *    *    *    *    *    *

"Q. Can you tell the court for certain the age of this girl from your examination of her teeth?—A. From daily experiences, that should be her age generally speaking. One of her molars is breaking out which never appears before the 9th year, and I rely on this

fact for saying that she can not be below the age of 8, because this child has already the lower lateral teeth out, at which age they normally come out. The central teeth come out at 7 years of age and the lateral ones at 8 and the first bicuspid tooth at 9 years and she is cutting her first upper left premolar.—Q. According to your conclusion, this child is at least 8 years of age, rather above than below that age?—A. Yes, possibly.

"No further questions.

"Judge: Q. You have stated that your conclusion concerning this child may vary depending on the growth of the child?—A. It might vary, as it happens sometimes; although she actually has teeth which might, in the mouth of a girl well developed or well nourished, be out at the age of 6, but such is not the case with the bicuspid tooth. It is a common occurrence in the United States for children 6 years old to have the lower teeth out. The first teeth out are those in the center and then the lateral ones and between the ages of 7 and 8 some higher up and others lower down. Here (illustrating it with the girl's mouth) there are no teeth higher up or lower down.—Q. Are these the teeth which normally come out at the age of 8?—A. Yes, sir.—Q. Unless by reason of the growth they come out at 6?—A. Yes, sir.—Q. And this girl, judging from her physical appearance, does she show such growth?—A. I do not think so. It might be, anything might happen, but normally this does not happen.—Q. In the case of a girl fully developed, might she have her teeth at the age of 6?—A. She might, and such a thing often happens in the United States due to the climate and the quality of food greatly contributes to it, but in Puerto Rico it is very rare and they are rather delayed. I fail to see anything from her physical appearance to show that she might have such perfect teeth at the age of 6." (Tr. of Ev., pp. 97, 98.)

Dr. Manuel Soto Rivera, a physician and surgeon and brother of plaintiff's attorney, testified in rebuttal that medicine is not an exact science; that there are general rules but all of them have their exceptions; that some teeth are expected at a certain age and others at another age; that at times certain teeth appear relatively later in some individuals than in others, and that there are people who never cut their teeth; that the dental surgeon, Dr. Hernández, had

stated correctly the ages when the various teeth come out, but that the dentist would have to admit that this is not an inflexible rule. When asked by the defendant if he could tell the court whether the plaintiff was one of the exceptions mentioned by him, he answered that he could not say, because in order to do so he would have to make a very careful study of the case.

The testimony of the physician did not overcome the statements of the dentist, which are corroborated by the affidavit of plaintiff's mother in her motion for leave to litigate in *forma pauperis,* dated April 12, 1940, in which she stated that at that time her daughter was six years old. They were also corroborated by the testimony of the mother herself at the trial when she said that after the birth of the girl she continued to live with Selosse for four years, until his death which occurred, as we know, on December 4, 1937; and this means that the girl must have been born four years previously, that is, in December 1933. Moreover, there must be borne in mind very especially the circumstance that the trial judge had the opportunity to see the girl during the trial and to judge her physical growth, a fact which if in harmony with the expert's testimony must have induced him to give it full credence, as he actually did. Admitting, therefore, that on the day of the trial the minor plaintiff's age was, not 8 years, as maintained by the dentist, but 7, as appears from her mother's testimony, it must necessarily be concluded that she must have been born approximately in September, 1933. As her mother was at that time married to José Ignacio Morales, inasmuch as the divorce decree is dated October 5, 1935, it is obvious that the plaintiff, assuming her to be the daughter of Guillermo Selosse, could not successfully allege her status as a natural child. As this in an indispensable requisite for the action of filiation to prosper, we must necessarily conclude that the trial court did the right thing in dismissing the complaint in the instant case.

For the reasons stated the appeal must be denied and the judgment appeal from affirmed.

Mr. Justice Travieso did not participate herein.